# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | Case No.  **1:23-MJ-00382** |
| *or identify the person by name and address)* | ) | |
| THE CELLULAR TELEPHONE ASSIGNED | ) | |
| CALL NUMBER 513-514-7951 | ) | |
| (T-Mobile US, Inc.) | ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):* See Attachment A. This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A), and 2711(3)(A).  Because the government has satisfied the requirements of 18 U.S.C. § 3122, this warrant also constitutes an order under 18 U.S.C. § 3123.

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Possession with Intent to Distribute a Controlled Substance and Conspiracy to do |
| 21 U.S.C. 846 | the same. |

The application is based on these facts:

See Affidavit in Support of Application for Search Warrant.  To ensure technical compliance with 18 U.S.C. 3121-3127, the requested warrant will also function as a pen register order.  I thus certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the Drug Enforcement Administration.  See 18 U.S.C. 3122(b), 3123(b).

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

TFO Kyle J. Wojcik, DEA
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ FaceTime video conference _____ *(specify reliable electronic means).*

Date:   **May 5, 2023**

_____
*Judge's signature*

City and state:   Cincinnati, Ohio

Hon. Stephanie K. Bowman, U.S. Magistrate Judge
_____
*Printed name and title*

## AO 106   Attachment


See Affidavit in Support of an Application for a Search Warrant.  To ensure technical compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, this warrant also functions as a pen register order.  Consistent with the requirement for an application for a pen register order, I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by The Drug Enforcement Administration. *See* 18 U.S.C. §§ 3122(b), 3123(b).


I declare under penalty of perjury that the foregoing is true and correct.


May 5, 2023 \
DATE

*s/Karl P. Kadon* \
KARL P. KADON (OH 09324) \
Assistant United States Attorney

## ATTACHMENT A
### Property to Be Searched

1. The cellular telephone assigned call number **513-514-7951 (SUBJECT TELEPHONE 2)**, whose service provider is T-Mobile US Inc., a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ.

2. Information about the location of the **SUBJECT TELEPHONE** that is within the possession, custody, or control of T-Mobile, including information about the location of the **SUBJECT TELEPHONE** if it is subsequently assigned a different call number.

# ATTACHMENT B

## Particular Things to be Seized

### I.     Information to be Disclosed by the Provider

All information about the location of the **SUBJECT TELEPHONE** described in Attachment A for a period of thirty days, during all times of day and night.  "Information about the location of the **SUBJECT TELEPHONE**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of **T-Mobile**, **T-Mobile** is required to disclose the Location Information to the government.  In addition, **T-Mobile** must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with **T-Mobile's** services, including by initiating a signal to determine the location of the **SUBJECT TELEPHONE** on **T-Mobile's** network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate **T-Mobile** for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

**II.    Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 21, United States Code, Sections 841 and 846 involving Jimi COLLIER, ███████████, and other as-yet known and unknown individuals.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBERS:<br><br>SUBJECT TELEPHONE 1: 513-473-1748<br><br>SUBJECT TELEPHONE 2: 513-514-7951<br><br>(T-MOBILE) | Case No. **1:23-MJ-00382**<br><br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Kyle J. Wojcik, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c) (1) (A) for information about the location of the cellular telephone assigned call number **513-473-1748** ("**SUBJECT TELEPHONE 1**"), subscribed to ███████████████ Cincinnati OH 45211 and cellular telephone assigned call number **513-514-7951** ("**SUBJECT TELEPHONE 2**") subscribed to James Jones at 75 vom OH 45237. The service provider for both **SUBJECT TELEPHONE(S) 1 and 2** is T-Mobile US Inc., a wireless provider headquartered at 4 Sylvan Way, Parsippany, NJ and are described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The

requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b) (1).

3.      I am a Detective with the Erlanger Police Department located in Kenton County, Kentucky and have been so employed since April 2013.  I have been a police officer for more than twelve (12) years and have completed basic law enforcement training at the Kentucky Department of Criminal Justice Training and have since received extensive training in the investigation of offenses involving controlled substances.  I am currently assigned as a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) and have been so assigned since June 2020.  I have been previously assigned to the Northern Kentucky Drug Strike Force (NKDSF) and in other capacities where my sole responsibility was to investigate drug offenses. My duties and responsibilities have included conducting criminal investigations for violations of federal law, particularly those found in Title 21 and Title 18 of the United States Code.  As a DEA TFO and drug detective, I have participated in over one hundred criminal investigations seeking evidence of violations of state drug violations and the Federal Controlled Substances Act (Title 21 of the United States Code).

4.      By virtue of my involvement in drug investigations, I have become familiar with the various means and mechanisms used by narcotics traffickers to import and distribute controlled substances and to conduct their illicit business without being detected by law enforcement.  I am familiar with the fact that drug traffickers make tremendous profits through drug trafficking and require large amounts of currency to operate surreptitiously. In this regard, I have obtained and executed numerous search warrants pursuant to which I have seized ledgers, notebooks, papers, and other related record-keeping instruments, all of which have been used to record multiple narcotics and related money laundering transactions, telephone books, diaries, invoices, beepers,

cellular telephones and correspondence, all of which have contained evidence of narcotic trafficking and money laundering violations.

5.     During the course of my law enforcement career, I have conducted and participated in the investigation of numerous criminal offenses, including those involved in the current investigation. I have participated in over one hundred illicit drug trafficking investigations, ranging from street level dealers to major drug suppliers. These investigations have included the unlawful importation, possession with intent to distribute and distribution of illegal substances, the related money laundering instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotics offenses. These investigations have resulted in the seizure of narcotics, arrests of suspects, their prosecution, conviction, and the seizure of large amounts of U.S. currency; and have involved: the use of confidential informants; undercover agents; the analysis of toll records; physical surveillances and the execution of search warrants. I have planned, participated in and supervised the execution of no fewer than one hundred search warrants authorizing the search of drug traffickers, locations associated with drug traffickers and their co-conspirators, such as residences, businesses, storage facilities, outbuildings, safety deposit boxes, vehicles, telephones and electronic devices. I have testified in grand jury proceedings and have written reports and analyzed documents in the course of investigations.

6.     I have been involved in post-arrest interviews of individuals, interviewed defendants in conjunction with post-arrest proffers, interviewed confidential informants and other non-defendant individuals with knowledge of illegal drug trafficking. During such interviews and discussions with other experienced agents, I have become familiar with the day-to-day operations of drug traffickers, distributors, and transporters of controlled substances. I have gained knowledge regarding the various methods, techniques, codes, and/or jargon used by illegal drug traffickers in

the course of their criminal activities, including the use of firearms to protect their narcotics related activities and the use of cellular telephones and personal digital assistants to facilitate communications while attempting to avoid law enforcement scrutiny.

7.      As a result of my participation in these, and other activities, I have gained particular knowledge in the use of undercover agents, confidential informants, physical surveillance, consensual recordings, investigative interviews, mail covers, garbage searches, GPS tracking devices, and pole-mounted cameras. I have been required to analyze information resulting from traditional record sources, such as, financial records, utility records, and telephone toll and subscriber records. I have further been required to analyze nontraditional record sources, such as the informal ledgers routinely maintained by narcotics traffickers listing amounts of drugs received from sources and distributed to customers and the amounts of money received from customers and owed to sources, commonly referred to as pay-owe sheets. I have also gained experience in the identification and collection of drug and non-drug evidence.

8.      I am currently assigned to the Cincinnati District Office of the DEA. I've received specialized training that focuses on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations.

9.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

10.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841 and 846 have been committed, are being committed, and will be committed by Jimi COLLIER, ███████████ and other known and as-yet unknown individuals. I believe there is probable cause that the **SUBJECT TELEPHONE(S) 1 and 2** are being used in furtherance of the aforementioned crimes and that there is also probable cause to believe that the location of the **SUBJECT TELEPHONE(S) 1 and 2** will constitute evidence of those criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

11.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND OF CASE

12.     In May of 2021, Agents from the United States Postal Inspection Service (USPIS) conducted a controlled delivery of several kilograms of cocaine shipped from Puerto Rico to Cincinnati, Ohio. A subject, hereafter referred to as Cooperating Defendant 1 (CD1)[1], took possession of that cocaine and was later charged in federal court in the Southern District of Ohio (SDOH) for violation of federal drug law.

13.     CD1 had provided USPIS with information on the person that would have been the recipient of the seized cocaine and stated that this same person had been the recipient of kilogram quantities of cocaine per month, between January of 2021 and May of 2021.

---

[1] CD1 is cooperating for case consideration and  the information that has been provided has proven truthful and been independently corroborated by agents.

14.     CD1 described a subject, known only to him/her as "Moreno Casino", who was a black male, bald, short, with a fine-line beard.  CD1 stated that this man drove a black Cadillac and a white Mercedes.  CD1 provided an Ohio license plate of GYA-4942 for the Mercedes.  CD1 stated that while at a casino, an employee had called the man "Jimmy".  CD1 also stated that in May of 2021, this person brought bulk US currency, payment for cocaine, to CD1, in a box which contained a shipping label from Nike to ███████████████████ in Cincinnati, Ohio.  DEA Task Force Officer (TFO) Joshua Schlie knew ███████ to be a drug trafficker.  TFO Schlie identified him as such, after monitoring calls between ███████ and his uncle, ███████, when ██████ was incarcerated with the Bureau of Prisons, in the mid-2000's, for violations of federal drug law.  During those calls, ██████ was instructing ███████, and other relatives to set aside money for him, so he would have it when he was released.

15.     TFO Schlie queried GYA-4942 through a license plate reader system and found that the license plate had been captured on October 25, 2021, on Hammel Ave., just north of Harmon Way, in Golf Manor, Ohio.  A photo taken at the time showed the plate attached to what appeared to be a white Mercedes. TFO Schlie located the VIN number for the Mercedes and through a commercial database and found that the VIN number was associated with Jimi COLLIER.  TFO Schlie located an additional vehicle that COLLIER had registered to him which was a black Cadillac with Ohio license plate HXQ8028. TFO Schlie also found that the VIN number for the white Mercedes was now assigned to Ohio license plate JSM7139, registered to Jimi COLLIER at 6231 Hammel Ave., in Golf Manor, Ohio.

16.     In May of 2022, TFO Schlie sent a picture of COLLIER to USPIS agents, which they showed to CD1.  CD1 positively identified COLLIER as the subject known to USPIS agents as "Moreno Casino".

17.     On June 1, 2021, TFO Schlie received player records for COLLIER from the Casino Control Commission. COLLIER listed his phone number as 513-473-1748 (**SUBJECT TELEPHONE 1**), in those records. TFO Schlie queried **SUBJECT TELEPHONE 1** through the Hamilton County Jail Calls 2 system and found that ████████████ who had been an inmate at the Hamilton County Ohio Justice Center on December 6, 2020, called this number.

18.     A criminal history inquiry was conducted on ████████ who was found to have been charged and convicted of the following felony offenses; Two (2) counts of Possession of Drugs, two (2) counts of Possession of Cocaine, Trafficking Cocaine, and Trafficking Heroin out of the State of Ohio.

19.     TFO Schlie also queried **SUBJECT TELEPHONE 1** through Cash App and found it to be associated to an account with the name "jimi collier", username: $jimicollier.

20.     On June 2, 2022, TFO Schlie applied for and was granted a State of Ohio, Hamilton County, search warrant for GPS location data regarding **SUBJECT TELEPHONE 1**.  During that period, TFO Schlie observed that COLLIER stayed at his address on Hammel Ave., most often, but also stayed in the 5400 block of Rolston Ave., in Norwood, OH, on occasion. COLLIER notably took trips to Chicago, IL and New York City, NY.  TFO Schlie also noted that no employment or source of income for COLLIER could be found.  Also, during this period, the white Mercedes referenced above was no longer being observed and COLLIER began to operate a black 2017 Porsche Panamera, bearing Ohio license plate JUE-8043, registered to ████████ ████. From commercial database records, TFO Schlie believed ██████ to be COLLIER's mother.

21.     On February 7, 2023, TFO Mark Bohan of the Hamilton County Heroin Task Force (HCTF) was contacted by the Cincinnati Police Department (CPD) about a suspected heroin/fentanyl overdose, which occurred at ███████████, Cincinnati, Ohio 45211.

22.     TFOs Bohan and Mike Davenport arrived on scene and were met by CPD Police Officer (PO) Darryl Williams and Hamilton County Coroner's Office (HCCO) Investigator (Inv.) Dylan Wical. PO Williams stated they were dispatched along with the Cincinnati Fire Department (CFD) for a male non-breather, possible drug overdose. PO Williams stated when they arrived they found the male, identified as ██████, deceased in a vehicle in the parking lot of ██ ███████.

23.     After being briefed by PO Williams, TFOs Bohan and Davenport, with Inv. Wical, photographed and processed the scene. Inv. Wical conducted a visual examination of the body and no signs of trauma or injury were observed. While processing the scene the TFOs and Inv. Wical located a baggie containing white powder clinched in ██████ right hand. A black Samsung phone was located on ██████ and a gray LG cell phone was located in the driver's side door, and were then seized by TFOs Bohan and Davenport.

24.     Between February 22, 2023, and March 2, 2023, the Hamilton County Ohio Crime Laboratory analyzed the recovered white powder from ██████ and concluded it was less than a one (1) gram mixture of fentanyl and cocaine.

25.     On April 4, 2023, the Hamilton County Ohio Coroner's Office released a cause of death in relation to ██████ as an Overdose of fentanyl and cocaine with acetyl fentanyl and probable xylazine also present.

26.     TFO Davenport submitted Cornett's phone to the Ohio Narcotics Intelligence Center (ONIC) run by the Ohio Department of Safety (DPS) in West Chester, Ohio for analysis

of the phone contents. ONIC analysts advised TFO Davenport that they had located text conversations prior to ███████ death between ███████ and **SUBJECT TELEPHONE 1**.

27.     TFO Davenport was advised by ONIC that this phone number belonged to a subject identified as Jimi COLLIER of Cincinnati, Ohio. ███████ had this contact identified in his phone as "Snake".

28.     Data from ███████ phone showed text messages on January 15, 2023, where ███████ asked COLLIER, "Can I get a half for 350?". COLLIER replied "4". ███████ asks "Can I come and grab that half cuzzo?". COLLIER replied "4". ███████ states "Ok. Meet you at your spot? I'm at my jouse right now." COLLIER replies "Im bout to go grab it."

29.     Based upon his training and experience, TFO Davenport believed this conversation to be evidence of a drug transaction where COLLIER provided the drugs to ███████

30.     Agents learned that back in February of 2019 Agents from the Norwood, Ohio (OH) Drug Task Force (NDTF), DEA Cincinnati District Office (CDO), Ohio Bureau of Criminal Investigation (BCI), Cincinnati Police Violent Crime Squad (VCS), Hamilton County Heroin Task Force (HCTF) and Department of Alcohol Tobacco and Firearms (ATF) initiated an investigation into a subject by the name of ███████. During the course of the investigation, agents executed two (2) state search warrants at residences associated with ███████ in Cincinnati, Ohio, which yielded approximately 381 grams of fentanyl, 53 grams of crack cocaine, digital scales, and items used to manufacture crack cocaine. ███████ was subsequently arrested at one (1) of the residences and charged with drug trafficking by the State of Ohio.

31.     Shortly after ███████ was arrested, he made a phone call from the Hamilton County (OH) Justice Center to a female who agents believed to be his ███████ mother. During the recorded call, ███████ made the following statement: "For real, I need you to call

9

CUZ too though. His number is 513-473-1748 (**SUBJECT TELEPHONE 1**). Tell him what happened and tell him I went down because someone told like a month ago. NDTF Agents learned through their Confidential Source (CS)[3] that ███████ source of supply went by the name of "CUZ". The CS reported that he/she believed ███████ called him "CUZ" because he is ███████ cousin.

32.     NDTF Agents queried telephone number **SUBJECT TELEPHONE 1** through databases available to law enforcement and found that it returned to a Jimi COLLIER residing at 6231 Hammel Avenue in Cincinnati, Ohio 45237. Investigators conducted surveillance at the address and observed a black Acura TL bearing Ohio license plate GHV2131 in the driveway.  A query of the license plate returned with Jimi COLLIER as the registered owner. Once investigators identified this residence for COLLIER, they conducted a trash pull which yielded two (2) empty boxes of baking soda which based on experience investigating drug offenses I know to be an item commonly used in the manufacturing / processing of cocaine base ("crack-cocaine").

33.     A criminal history inquiry was conducted on COLLIER who was found to have been charged and convicted of the following felony offenses: Drug Trafficking, Drug Abuse, and Possession of Drugs by the State of Ohio.

34.     An administrative subpoena was served to T-Mobile for **SUBJECT TELEPHONE 1** and a review of the records revealed it was subscribed to ███████████ ███████████. Cincinnati, OH. 45211. Information received from T-Mobile indicated the service for **SUBJECT TELEPHONE 1** began on April 29, 2021.

---

[3] CS was cooperating for case consideration and  the information that has been provided has proven truthful and been independently corroborated by agents.

35. Toll analysis was conducted on **SUBJECT TELEPHONE 1** which showed that phone number ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ was a top caller. Investigators queried that phone number and found that it was associated with ▓▓▓▓▓▓▓▓ who TFO Schlie knew to be the girlfriend of COLLIER. Another top caller of **SUBJECT TELEPHONE 1** was phone number ▓▓▓▓▓▓▓▓▓▓▓▓ Investigators queried that phone number and found that it was associated with ▓▓▓▓▓▓▓▓ .

36. Utilizing a commercial database available to law enforcement, I found that ▓▓▓▓▓▓▓▓ had previous listed address as 6231 Hammel Ave, Cincinnati, Ohio, 45237. The database also listed a "Jimi" as a spouse/close association.

37. In April of 2023, TFO Schlie was contacted by USPIS Special Agent (SA) Karen O'Neill who said that CD1 told her that he/she was recently in contact with Jimi COLLIER. SA O'Neill provided TFO Schlie and I with recorded FaceTime Calls between CD1 and COLLIER. I reviewed multiple FaceTime calls where CD1 and COLLIER discussed a future drug transaction in which COLLIER wanted to get five (5) kilograms from CD1 and in exchange would receive eighteen thousand five hundred dollars ($18,500.00) per kilogram. SA O'Neill provided the phone number that CD1 was contacting COLLIER on as 513-514-7951 (**SUBJECT TELEPHONE 2**).

38. An administrative subpoena was served to T-Mobile for **SUBJECT TELEPHONE 2** and a review of the records revealed it was subscribed to James Jones at 75 vom, OH. 45237. This address was queried and could not be located. The 45237 zip code includes the neighborhoods of Roselawn, Bond Hill, Golf Manor, Ohio where COLLIER's address, 6231 Hammel Ave., is located. Information received from T-Mobile indicated the service for **SUBJECT TELEPHONE 2** began on September 28, 2022.

39.     Toll analysis was conducted on **SUBJECT TELEPHONE 2** which showed it to be in contact with the ███ number and the ███ number with which **SUBJECT TELEPHONE 1** was also in contact.

40.     On April 28, 2023, United States Magistrate Judge Karen L. Litkovitz authorized a Pen Register order for **SUBJECT TELEPHONE(S) 1 and 2**.  I reviewed data collected from the Pen Register of both **SUBJECT TELEPHONES** and found them to be in contact with the ███ number.

41.     Based upon my training, experience, and knowledge of this investigation I know drug traffickers and members of DTOs utilize multiple devices and frequently switch and drop cellular telephone numbers to avoid law enforcement detection.  Furthermore, I am also aware that drug traffickers register their cellular devices under associates' names that aren't affiliated with the DTO in an effort to avoid law enforcement identification. Because as described above this is what he has done, and being aware of the other facts uncovered in this investigation - also as set forth above - I believe it reasonable and likely that COLLIER is utilizing multiple cellular telephone numbers in order to avoid detection.

42.     Based upon my belief that **SUBJECT TELEPHONE(S) 1 and 2** are being used by Jimi COLLIER and or yet to be identified members of the DTO and because Jimi COLLIER, ███████, and other yet to be identified co-conspirators, are involved in the coordination, delivery, and trafficking of drugs, I believe that the location of the of the **SUBJECT TELEPHONES** will help reveal COLLIER's location and potential locations of drugs and proceeds.

43.     In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information

about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

44. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the **SUBJECT TELEPHONES**, including by initiating a signal to determine the location of the **SUBJECT TELEPHONES** on T-Mobile's network or with such other reference points as may be reasonably available.

45. Based on my training and experience, I know that T-Mobile can collect cell-site data about the **SUBJECT TELEPHONES**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically

collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

46.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

47.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the **SUBJECT TELEPHONES** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  See 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  See 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  See 18 U.S.C. § 3103a(b)(2).

48.     I further request that the Court to direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile.  I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile wireless services, including by initiating a signal to determine the location of the **SUBJECT**

**TELEPHONES** on T-Mobile wireless network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

49.     I further request that the Court authorize the government to install and operate a cell-site simulator to obtain dialing, routing, addressing, and signaling information from the **SUBJECT TELEPHONES** to determine the location of the **SUBJECT TELEPHONES**.

50.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **SUBJECT TELEPHONES** outside of daytime hours.  I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation.  Accordingly, there is probable cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

*Kyle J. Wojcik*
Kyle J. Wojcik
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on this   5th   day of May, 2023 by reliable electronic means, specifically, FaceTime video conference.

*Stephanie K. Bowman*
Hon. Stephanie K. Bowman
United States Magistrate Judge

15

## ATTACHMENT A
### Property to Be Searched

1. The cellular telephone assigned call numbers **513-473-1748 (SUBJECT TELEPHONE 1)** and **513-514-7951 (SUBJECT TELEPHONE 2)**, whose service provider is T-Mobile US Inc., a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ.

2. Information about the location of the **SUBJECT TELEPHONES** that is within the possession, custody, or control of T-Mobile, including information about the location of the **SUBJECT TELEPHONES** if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be Disclosed by the Provider**

All information about the location of the **SUBJECT TELEPHONES** described in Attachment A for a period of thirty days, during all times of day and night.  "Information about the location of the **SUBJECT TELEPHONES**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of **T-Mobile**, **T-Mobile** is required to disclose the Location Information to the government.  In addition, **T-Mobile** must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with **T-Mobile's** services, including by initiating a signal to determine the location of the **SUBJECT TELEPHONES** on **T-Mobile's** network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate **T-Mobile** for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

**II.    Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 21, United States Code, Sections 841 and 846 involving Jimi COLLIER, ███████████, and other as-yet known and unknown individuals.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No. **1:23-MJ-00382** |
| THE CELLULAR TELEPHONE ASSIGNED | ) | |
| CALL NUMBER 513-514-7951 | ) | |
| (T-Mobile US, Inc.) | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Southern_____ District of _____Ohio_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A. This Court has authority to issue this warrant under 18 U.S.C. 2703(c)(1)(A) and 2711(3)(A).  Because the government has satisfied the requirements of 18 U.S.C. 3122, this warrant also constitutes an order under 18 U.S.C. 3123.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____May 19, 2023_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Duty Magistrate Judge_____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☑ for _30_ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      **1:26 PM, May 5, 2023**          *Stephanie K. Bowman*
                                                                                                     *Judge's signature*

City and state:      Cincinnati, Ohio          Hon. Stephanie K. Bowman, U.S. Magistrate Judge
                                                                                    *Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**<u>ATTACHMENT A</u>**
**Property to Be Searched**

1. The cellular telephone assigned call number **513-514-7951 (SUBJECT TELEPHONE 2)**, whose service provider is T-Mobile US Inc., a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ.

2. Information about the location of the **SUBJECT TELEPHONE** that is within the possession, custody, or control of T-Mobile, including information about the location of the **SUBJECT TELEPHONE** if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be Disclosed by the Provider**

All information about the location of the **SUBJECT TELEPHONE** described in Attachment A for a period of thirty days, during all times of day and night.  "Information about the location of the **SUBJECT TELEPHONE**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of **T-Mobile**, **T-Mobile** is required to disclose the Location Information to the government.  In addition, **T-Mobile** must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with **T-Mobile's** services, including by initiating a signal to determine the location of the **SUBJECT TELEPHONE** on **T-Mobile's** network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate **T-Mobile** for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 21, United States Code, Sections 841 and 846 involving Jimi COLLIER, ██████████, and other as-yet known and unknown individuals.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>THE CELLULAR TELEPHONE ASSIGNED<br>CALL NUMBER 513-514-7951<br>(T-Mobile US, Inc.) | )<br>)<br>)  Case No. 1:23-MJ-382<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):* See Attachment A. This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A), and 2711(3)(A). Because the government has satisfied the requirements of 18 U.S.C. § 3122, this warrant also constitutes an order under 18 U.S.C. § 3123.

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1)<br>21 U.S.C. 846 | Possession with Intent to Distribute a Controlled Substance and Conspiracy to do the same. |

The application is based on these facts:

See Affidavit in Support of Application for Search Warrant. To ensure technical compliance with 18 U.S.C. 3121-3127, the requested warrant will also function as a pen register order. I thus certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the Drug Enforcement Administration. See 18 U.S.C. 3122(b), 3123(b).

☑ Continued on the attached sheet.

☑ Delayed notice of _30_ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Kyle J. Wojcik*
*Applicant's signature*

TFO Kyle J. Wojcik, DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

**via FaceTime video** _____ *(specify rel...)*

Date: **Jun 5, 2023**

*Karen L. Litkovitz*
Karen L. Litkovitz
**United States Magistrate Judge**

City and state: Cincinnati, Ohio

## **AO 106   Attachment**

 

      See Affidavit in Support of an Application for a Search Warrant.  To ensure technical compliance with the Pen Register Statute, <u>18 U.S.C. §§ 3121-3127</u>, this warrant also functions as a pen register order.  Consistent with the requirement for an application for a pen register order, I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by The Drug Enforcement Administration. *See* <u>18 U.S.C. §§ 3122(b)</u>, <u>3123(b)</u>.

      I declare under penalty of perjury that the foregoing is true and correct.

June 5, 2023 _____           *s/Karl P. Kadon* _____
DATE                                KARL P. KADON (OH 09324)
                                     Assistant United States Attorney

**<u>ATTACHMENT A</u>**
**Property to Be Searched**

1. The cellular telephone assigned call numbers **513-514-7951 (SUBJECT TELEPHONE 2)**,whose service provider is T-Mobile US Inc., a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ.

2. Information about the location of the **SUBJECT TELEPHONE** that is within the possession, custody, or control of T-Mobile, including information about the location of the **SUBJECT TELEPHONE** if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

### I.      Information to be Disclosed by the Provider

All information about the location of the **SUBJECT TELEPHONE** described in Attachment A for a period of thirty days, during all times of day and night.  "Information about the location of the **SUBJECT TELEPHONE**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of **T-Mobile**, **T-Mobile** is required to disclose the Location Information to the government.  In addition, **T-Mobile** must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with **T-Mobile's** services, including by initiating a signal to determine the location of the **SUBJECT TELEPHONE** on **T-Mobile's** network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate **T-Mobile** for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 21, United States Code, Sections 841 and 846 involving Jimi COLLIER, ███████████ and other as-yet known and unknown individuals.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBERS:** | |
| | **Case No. 1:23-mj-382** |
| **SUBJECT TELEPHONE 1: 513-473-1748** | |
| **SUBJECT TELEPHONE 2: 513-514-7951** | **Filed Under Seal** |
| **(T-MOBILE)** | |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Kyle J. Wojcik, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c) (1) (A) for information about the location of the cellular telephone assigned call number **513-473-1748** ("**SUBJECT TELEPHONE 1**"), subscribed to ████████ at ██████████████████ and cellular telephone assigned call number **513-514-7951** ("**SUBJECT TELEPHONE 2**") subscribed to James Jones at 75 vom OH 45237. The service provider for both **SUBJECT TELEPHONE(S) 1 and 2** is T-Mobile US Inc., a wireless provider headquartered at 4 Sylvan Way, Parsippany, NJ and are described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.     Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127.  The

requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b) (1).

3.      I am a Detective with the Erlanger Police Department located in Kenton County, Kentucky and have been so employed since April 2013.  I have been a police officer for more than twelve (12) years and have completed basic law enforcement training at the Kentucky Department of Criminal Justice Training and have since received extensive training in the investigation of offenses involving controlled substances.  I am currently assigned as a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) and have been so assigned since June 2020.  I have been previously assigned to the Northern Kentucky Drug Strike Force (NKDSF) and in other capacities where my sole responsibility was to investigate drug offenses. My duties and responsibilities have included conducting criminal investigations for violations of federal law, particularly those found in Title 21 and Title 18 of the United States Code.  As a DEA TFO and drug detective, I have participated in over one hundred criminal investigations seeking evidence of violations of state drug violations and the Federal Controlled Substances Act (Title 21 of the United States Code).

4.      By virtue of my involvement in drug investigations, I have become familiar with the various means and mechanisms used by narcotics traffickers to import and distribute controlled substances and to conduct their illicit business without being detected by law enforcement.  I am familiar with the fact that drug traffickers make tremendous profits through drug trafficking and require large amounts of currency to operate surreptitiously. In this regard, I have obtained and executed numerous search warrants pursuant to which I have seized ledgers, notebooks, papers, and other related record-keeping instruments, all of which have been used to record multiple narcotics and related money laundering transactions, telephone books, diaries, invoices, beepers,

cellular telephones and correspondence, all of which have contained evidence of narcotic trafficking and money laundering violations.

5.      During the course of my law enforcement career, I have conducted and participated in the investigation of numerous criminal offenses, including those involved in the current investigation. I have participated in over one hundred illicit drug trafficking investigations, ranging from street level dealers to major drug suppliers.  These investigations have included the unlawful importation, possession with intent to distribute and distribution of illegal substances, the related money laundering instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotics offenses.  These investigations have resulted in the seizure of narcotics, arrests of suspects, their prosecution, conviction, and the seizure of large amounts of U.S. currency; and have involved: the use of confidential informants; undercover agents; the analysis of toll records; physical surveillances and the execution of search warrants.  I have planned, participated in and supervised the execution of no fewer than one hundred search warrants authorizing the search of drug traffickers, locations associated with drug traffickers and their co-conspirators, such as residences, businesses, storage facilities, outbuildings, safety deposit boxes, vehicles, telephones and electronic devices. I have testified in grand jury proceedings and have written reports and analyzed documents in the course of investigations.

6.      I have been involved in post-arrest interviews of individuals, interviewed defendants in conjunction with post-arrest proffers, interviewed confidential informants and other non-defendant individuals with knowledge of illegal drug trafficking.  During such interviews and discussions with other experienced agents, I have become familiar with the day-to-day operations of drug traffickers, distributors, and transporters of controlled substances. I have gained knowledge regarding the various methods, techniques, codes, and/or jargon used by illegal drug traffickers in

the course of their criminal activities, including the use of firearms to protect their narcotics related activities and the use of cellular telephones and personal digital assistants to facilitate communications while attempting to avoid law enforcement scrutiny.

7.      As a result of my participation in these, and other activities, I have gained particular knowledge in the use of undercover agents, confidential informants, physical surveillance, consensual recordings, investigative interviews, mail covers, garbage searches, GPS tracking devices, and pole-mounted cameras.  I have been required to analyze information resulting from traditional record sources, such as, financial records, utility records, and telephone toll and subscriber records.  I have further been required to analyze nontraditional record sources, such as the informal ledgers routinely maintained by narcotics traffickers listing amounts of drugs received from sources and distributed to customers and the amounts of money received from customers and owed to sources, commonly referred to as pay-owe sheets. I have also gained experience in the identification and collection of drug and non-drug evidence.

8.      I am currently assigned to the Cincinnati District Office of the DEA.  I've received specialized training that focuses on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations.

9.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

4

10. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841 and 846 have been committed, are being committed, and will be committed by Jimi COLLIER, ██████████ and other known and as-yet unknown individuals. I believe there is probable cause that the **SUBJECT TELEPHONE(S) 1 and 2** are being used in furtherance of the aforementioned crimes and that there is also probable cause to believe that the location of the **SUBJECT TELEPHONE(S) 1 and 2** will constitute evidence of those criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

11. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

## **BACKGROUND OF CASE**

12. In May of 2021, Agents from the United States Postal Inspection Service (USPIS) conducted a controlled delivery of several kilograms of cocaine shipped from Puerto Rico to Cincinnati, Ohio. A subject, hereafter referred to as Cooperating Defendant 1 (CD1)[1], took possession of that cocaine and was later charged in federal court in the Southern District of Ohio (SDOH) for violation of federal drug law.

13. CD1 had provided USPIS with information on the person that would have been the recipient of the seized cocaine and stated that this same person had been the recipient of kilogram quantities of cocaine per month, between January of 2021 and May of 2021.

---

[1] CD1 is cooperating for case consideration and the information that has been provided has proven truthful and been independently corroborated by agents.

5

14.     CD1 described a subject, known only to him/her as "Moreno Casino", who was a black male, bald, short, with a fine-line beard.  CD1 stated that this man drove a black Cadillac and a white Mercedes.  CD1 provided an Ohio license plate of GYA-4942 for the Mercedes.  CD1 stated that while at a casino, an employee had called the man "Jimmy".  CD1 also stated that in May of 2021, this person brought bulk US currency, payment for cocaine, to CD1, in a box which contained a shipping label from Nike to ███████████ at ███████████████████ ████  DEA Task Force Officer (TFO) Joshua Schlie knew ██████████ to be a drug trafficker. TFO Schlie identified him as such, after monitoring calls between ████████ and his uncle, ███████████ when █████ was incarcerated with the Bureau of Prisons, in the mid-2000's, for violations of federal drug law.  During those calls, █████ was instructing ███████████ and other relatives to set aside money for him, so he would have it when he was released.

15.     TFO Schlie queried GYA-4942 through a license plate reader system and found that the license plate had been captured on October 25, 2021, on Hammel Ave., just north of Harmon Way, in Golf Manor, Ohio.  A photo taken at the time showed the plate attached to what appeared to be a white Mercedes. TFO Schlie located the VIN number for the Mercedes and through a commercial database and found that the VIN number was associated with Jimi COLLIER.  TFO Schlie located an additional vehicle that COLLIER had registered to him which was a black Cadillac with Ohio license plate HXQ8028. TFO Schlie also found that the VIN number for the white Mercedes was now assigned to Ohio license plate JSM7139, registered to Jimi COLLIER at 6231 Hammel Ave., in Golf Manor, Ohio.

16.     In May of 2022, TFO Schlie sent a picture of COLLIER to USPIS agents, which they showed to CD1.  CD1 positively identified COLLIER as the subject known to USPIS agents as "Moreno Casino".

17.     On June 1, 2021, TFO Schlie received player records for COLLIER from the Casino Control Commission. COLLIER listed his phone number as 513-473-1748 (**SUBJECT TELEPHONE 1**), in those records. TFO Schlie queried **SUBJECT TELEPHONE 1** through the Hamilton County Jail Calls 2 system and found that ████████████ who had been an inmate at the Hamilton County Ohio Justice Center on December 6, 2020, called this number.

18.     A criminal history inquiry was conducted on ███████ who was found to have been charged and convicted of the following felony offenses; Two (2) counts of Possession of Drugs, two (2) counts of Possession of Cocaine, Trafficking Cocaine, and Trafficking Heroin out of the State of Ohio.

19.     TFO Schlie also queried **SUBJECT TELEPHONE 1** through Cash App and found it to be associated to an account with the name "jimi collier", username: $jimicollier.

20.     On June 2, 2022, TFO Schlie applied for and was granted a State of Ohio, Hamilton County, search warrant for GPS location data regarding **SUBJECT TELEPHONE 1**.  During that period, TFO Schlie observed that COLLIER stayed at his address on Hammel Ave., most often, but also stayed in the 5400 block of Rolston Ave., in Norwood, OH, on occasion. COLLIER notably took trips to Chicago, IL and New York City, NY.  TFO Schlie also noted that no employment or source of income for COLLIER could be found.  Also, during this period, the white Mercedes referenced above was no longer being observed and COLLIER began to operate a black 2017 Porsche Panamera, bearing Ohio license plate JUE-8043, registered to ██████ ██████ From commercial database records, TFO Schlie believed ██████ to be COLLIER's mother.

---

2 Jail Calls are admonished and recorded

21.     On February 7, 2023, TFO Mark Bohan of the Hamilton County Heroin Task Force (HCTF) was contacted by the Cincinnati Police Department (CPD) about a suspected heroin/fentanyl overdose, which occurred at ███████████████████████████████.

22.     TFOs Bohan and Mike Davenport arrived on scene and were met by CPD Police Officer (PO) Darryl Williams and Hamilton County Coroner's Office (HCCO) Investigator (Inv.) Dylan Wical. PO Williams stated they were dispatched along with the Cincinnati Fire Department (CFD) for a male non-breather, possible drug overdose. PO Williams stated when they arrived they found the male, identified as ████████ deceased in a vehicle in the parking lot of ██ ████████.

23.     After being briefed by PO Williams, TFOs Bohan and Davenport, with Inv. Wical, photographed and processed the scene. Inv. Wical conducted a visual examination of the body and no signs of trauma or injury were observed. While processing the scene the TFOs and Inv. Wical located a baggie containing white powder clinched in Cornett's right hand. A black Samsung phone was located on ███████ and a gray LG cell phone was located in the driver's side door and were then seized by TFOs Bohan and Davenport.

24.     Between February 22, 2023, and March 2, 2023, the Hamilton County Ohio Crime Laboratory analyzed the recovered white powder from ███████ and concluded it was less than a one (1) gram mixture of fentanyl and cocaine.

25.     On April 4, 2023, the Hamilton County Ohio Coroner's Office released a cause of death in relation to ████████ as an Overdose of fentanyl and cocaine with acetyl fentanyl and probable xylazine also present.

26.     TFO Davenport submitted Cornett's phone to the Ohio Narcotics Intelligence Center (ONIC) run by the Ohio Department of Safety (DPS) in West Chester, Ohio for analysis

of the phone contents. ONIC analysts advised TFO Davenport that they had located text conversations prior to Cornett's death between ██████ and **SUBJECT TELEPHONE 1**.

27.     TFO Davenport was advised by ONIC that this phone number belonged to a subject identified as Jimi COLLIER of Cincinnati, Ohio. ██████ had this contact identified in his phone as "Snake".

28.     Data from Cornett's phone showed text messages on January 15, 2023, where ██████ asked COLLIER, "Can I get a half for 350?". COLLIER replied "4". ██████ asks "Can I come and grab that half cuzzo?". COLLIER replied "4". ██████ states "Ok. Meet you at your spot? I'm at my jouse right now." COLLIER replies "Im bout to go grab it."

29.     Based upon his training and experience, TFO Davenport believed this conversation to be evidence of a drug transaction where COLLIER provided the drugs to ██████

30.     Agents learned that back in February of 2019 Agents from the Norwood, Ohio (OH) Drug Task Force (NDTF), DEA Cincinnati District Office (CDO), Ohio Bureau of Criminal Investigation (BCI), Cincinnati Police Violent Crime Squad (VCS), Hamilton County Heroin Task Force (HCTF) and Department of Alcohol Tobacco and Firearms (ATF) initiated an investigation into a subject by the name of ██████████ During the course of the investigation, agents executed two (2) state search warrants at residences associated with ██████ in Cincinnati, Ohio, which yielded approximately 381 grams of fentanyl, 53 grams of crack cocaine, digital scales, and items used to manufacture crack cocaine. ██████ was subsequently arrested at one (1) of the residences and charged with drug trafficking by the State of Ohio.

31.     Shortly after ██████ was arrested, he made a phone call from the Hamilton County (OH) Justice Center to a female who agents believed to be his ██████ mother. During the recorded call, ██████ made the following statement: "For real, I need you to call

CUZ too though. His number is 513-473-1748 (**SUBJECT TELEPHONE 1**). Tell him what happened and tell him I went down because someone told like a month ago. NDTF Agents learned through their Confidential Source (CS)[3] that ███████ source of supply went by the name of "CUZ". The CS reported that he/she believed ████████ called him "CUZ" because he is ███████ cousin.

32.     NDTF Agents queried telephone number **SUBJECT TELEPHONE 1** through databases available to law enforcement and found that it returned to a Jimi COLLIER residing at 6231 Hammel Avenue in Cincinnati, Ohio 45237. Investigators conducted surveillance at the address and observed a black Acura TL bearing Ohio license plate GHV2131 in the driveway.  A query of the license plate returned with Jimi COLLIER as the registered owner. Once investigators identified this residence for COLLIER, they conducted a trash pull which yielded two (2) empty boxes of baking soda which based on experience investigating drug offenses I know to be an item commonly used in the manufacturing / processing of cocaine base ("crack-cocaine").

33.     A criminal history inquiry was conducted on COLLIER who was found to have been charged and convicted of the following felony offenses: Drug Trafficking, Drug Abuse, and Possession of Drugs by the State of Ohio.

34.     An administrative subpoena was served to T-Mobile for **SUBJECT TELEPHONE 1** and a review of the records revealed it was subscribed to ████████ at ███ ████████████████████. Information received from T-Mobile indicated the service for **SUBJECT TELEPHONE 1** began on April 29, 2021.

---

[3] CS was cooperating for case consideration and the information that has been provided has proven truthful and been independently corroborated by agents.

35.     Toll analysis was conducted on **SUBJECT TELEPHONE 1** which showed that phone number 513-908-8694 (the x8694 number) was a top caller.  Investigators queried that phone number and found that it was associated with ▓▓▓▓▓▓▓ who TFO Schlie knew to be the girlfriend of COLLIER. Another top caller of **SUBJECT TELEPHONE 1** was phone number 513-966-0081 (the x0081 number).  Investigators queried that phone number and found that it was associated with ▓▓▓▓▓▓▓

36.     Utilizing a commercial database available to law enforcement, I found that ▓▓▓▓▓▓▓ had previous listed address as 6231 Hammel Ave, Cincinnati, Ohio, 45237. The database also listed a "Jimi" as a spouse/close association.

37.     In April of 2023, TFO Schlie was contacted by USPIS Special Agent (SA) Karen O'Neill who said that CD1 told her that he/she was recently in contact with Jimi COLLIER.  SA O'Neill provided TFO Schlie and I with recorded FaceTime Calls between CD1 and COLLIER. I reviewed multiple FaceTime calls where CD1 and COLLIER discussed a future drug transaction in which COLLIER wanted to get five (5) kilograms from CD1 and in exchange would receive eighteen thousand five hundred dollars ($18,500.00) per kilogram. SA O'Neill provided the phone number that CD1 was contacting COLLIER on as 513-514-7951 (**SUBJECT TELEPHONE 2**).

38.     An administrative subpoena was served to T-Mobile for **SUBJECT TELEPHONE 2** and a review of the records revealed it was subscribed to James Jones at 75 vom, OH. 45237. This address was queried and could not be located.  The 45237 zip code includes the neighborhoods of Roselawn, Bond Hill, Golf Manor, Ohio where COLLIER's address, 6231 Hammel Ave., is located. Information received from T-Mobile indicated the service for **SUBJECT TELEPHONE 2** began on September 28, 2022.

39.     Toll analysis was conducted on **SUBJECT TELEPHONE 2** which showed it to be in contact with the x8694 number and the x0081 number with which **SUBJECT TELEPHONE 1** was also in contact.

40.     On April 28, 2023, United States Magistrate Judge Karen L. Litkovitz authorized a Pen Register order for **SUBJECT TELEPHONE(S) 1 and 2**.  I reviewed data collected from the Pen Register of both **SUBJECT TELEPHONES** and found them to be in contact with the x8694 number.

41.     On May 5, 2023, United States Magistrate Judge Stephanie K. Bowman granted and signed search warrants authorizing the use of GPS phone pings on **SUBJECT TELEPHONE(S) 1 and 2.**

42.     On May 8, 2023, at approximately 11:35 a.m., TFO Schlie conducted surveillance at Vine and Walnut Streets in Elmwood, Ohio where COLLIER's Porsche Panamera was parked. While on surveillance, agents received electronic surveillance location data for the **SUBJECT TELEPHONES** that showed them to be in the area of Vine and Walnut Streets.

43.     At approximately 11:55 a.m., TFO Schlie observed COLLIER walk from the west side of Vine Street to the Porsche and depart.  Approximately five (5) minutes later, TFO Schlie located the Porsche parked on Dillward Street near 301 W. North Bend Road in Cincinnati, Ohio. Shortly after TFO Schlie located the Porsche he observed COLLIER walking away from that house and back into the Porsche.

44.     Later that day, I reviewed Pen Register data of **SUBJECT TELEPHONE 2** and observed it to be in contact with telephone number 614-315-4811 (the x4811 number).  An administrative subpoena was served to T-Mobile for the x4811 number and a review of the records revealed that it was subscribed to ████████        ████████████    with a service and billing address of ████████████████

12

45.     Based on investigation I learned that ████████ is a source of supply (SOS) of cocaine in Columbus, Ohio, and is receiving fifty (50) to sixty (60) kilograms of cocaine a month from a SOS in California.

46.     On May 12, 2023, at approximately 11:00 a.m., I conducted surveillance at 6231 Hammel Avenue where I observed the Porsche Panamera parked in the driveway.  While on surveillance I received electronic surveillance location data for the **SUBJECT TELEPHONES** that showed them to be in the area of Hammel Avenue.  Approximately fifteen (15) minutes later I observed who I believed to be COLLIER walk around the Porsche in the driveway and then the vehicle depart.  I followed the Porsche to 301 W. North Bend Road where the vehicle was observed to park in the driveway of a detached garage behind the house.  While on surveillance I received electronic surveillance location data for the **SUBJECT TELEPHONES** that showed them to be in the area of W North Bend Road.

47.     On May 25, 2023, at approximately 10:04 a.m., I received electronic surveillance location data for **SUBJECT TELEPHONE 2** that showed it to be in the area of 5437 Rolston Avenue in Norwood, Ohio which I knew to be an address associated with ████████ who is COLLIER's girlfriend.  Shortly after receiving the location data I arrived in the area and observed COLLIER's Porsche parked in the driveway of the house.  While on surveillance I received electronic surveillance location data for **SUBJECT TELEPHONE 1** that showed it to be in the area of Rolston Avenue.  Approximately fifteen (15) minutes later I observed the Porsche pull out of the driveway and followed it to 6231 Hammel Avenue.  After the vehicle arrived in the area I observed COLLIER to be driving the Porsche as he parked it on the street.  **SUBJECT TELEPHONE(S) 1 and 2** showed to be in the area of Hammel Avenue while agents were conducting surveillance.

48.     At approximately 11:00 a.m., I observed the Porsche pull away from the residence while other agents followed.  As agents were following the vehicle, it was observed to turn onto multiple side streets off Montgomery Road in a manner believed to detect law enforcement surveillance.  Agents were unable to follow the vehicle at this time, but then observed it driving back on Montgomery Road towards the area of Rolston Avenue.  TFO Schlie followed the vehicle as it parked in the driveway of 5437 Rolston Avenue where COLLIER was observed walking up the steps towards the house. Approximately three (3) minutes later TFO Schlie observed the Porsche pull out of the driveway where agents followed it to 301 W. North Bend Road.  While on surveillance agents received electronic surveillance location data for the **SUBJECT TELEPHONES** that showed them to be in the area of W. North Bend Road.

49.     At approximately 12:05 p.m., I observed COLLIER exit the front door of the house and walk towards Dillward Street where TFO Schlie then observed COLLIER get into the Porsche.  Shortly after COLLIER got into the Porsche, TFO Schlie observed an older unknown black male walk up to the passenger side of the Porsche and walk back to a blue Dodge Caravan that was parked on the street[4].  I observed both vehicle then drive north on Dillward Street towards W. North Bend Road.  As both vehicles turned to go east on W. North Bend Road they appeared to be traveling in tandem.  Agents attempted to follow both vehicles, but lost sight of the Porsche as it turned onto a side street.

50.     Based upon my training, experience, and knowledge of this investigation I know drug traffickers and members of DTOs utilize multiple devices and frequently switch and drop cellular telephone numbers to avoid law enforcement detection.  Furthermore, I am also aware that drug traffickers register their cellular devices under associates' names that aren't affiliated with the DTO in an effort to avoid law enforcement identification. Because as described above

---

[4] Based on my training and experience I believe that this meeting was indicative of a drug transaction.

this is what he has done, and being aware of the other facts uncovered in this investigation - also as set forth above - I believe it reasonable and likely that COLLIER is utilizing multiple cellular telephone numbers in order to avoid detection.

51.     Based upon my belief that **SUBJECT TELEPHONE(S) 1 and 2** are being used by Jimi COLLIER and or yet to be identified members of the DTO and because Jimi COLLIER, ▮▮▮▮▮▮▮▮ and other yet to be identified co-conspirators, are involved in the coordination, delivery, and trafficking of drugs, I believe that the location of the of the **SUBJECT TELEPHONES** will help reveal COLLIER's location and potential locations of drugs and proceeds.

52.     In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

53.     Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the **SUBJECT TELEPHONES**, including by initiating a signal to determine the location of the **SUBJECT TELEPHONES** on T-Mobile's network or with such other reference points as may be reasonably available.

54.     Based on my training and experience, I know that T-Mobile can collect cell-site data about the **SUBJECT TELEPHONES**.  Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication.  I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

55.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

56.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the **SUBJECT TELEPHONES** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  See 18 U.S.C. § 3103a(b)(l).  As further specified

in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. See 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

57.     I further request that the Court to direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile wireless services, including by initiating a signal to determine the location of the **SUBJECT TELEPHONES** on T-Mobile wireless network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

58.     I further request that the Court authorize the government to install and operate a cell-site simulator to obtain dialing, routing, addressing, and signaling information from the **SUBJECT TELEPHONES** to determine the location of the **SUBJECT TELEPHONES**.

59.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **SUBJECT TELEPHONES** outside of daytime hours. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all the

17

targets of the investigation.  Accordingly, there is probable cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_Kyle J. Wojcik_

Kyle J. Wojcik
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on this    5th  day of June, 2023

Karen L. Litkovitz
United States Magistrate Judge

18

**<u>ATTACHMENT A</u>**
**Property to Be Searched**

1.  The cellular telephone assigned call numbers **513-514-7951 (SUBJECT TELEPHONE 2)**, whose service provider is T-Mobile US Inc., a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ.

2.  Information about the location of the **SUBJECT TELEPHONE** that is within the possession, custody, or control of T-Mobile, including information about the location of the **SUBJECT TELEPHONE** if it is subsequently assigned a different call number.

## **ATTACHMENT B**

### **Particular Things to be Seized**

**I.      Information to be Disclosed by the Provider**

All information about the location of the **SUBJECT TELEPHONE** described in Attachment A for a period of thirty days, during all times of day and night.  "Information about the location of the **SUBJECT TELEPHONE**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of **T-Mobile**, **T-Mobile** is required to disclose the Location Information to the government.  In addition, **T-Mobile** must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with **T-Mobile's** services, including by initiating a signal to determine the location of the **SUBJECT TELEPHONE** on **T-Mobile's** network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate **T-Mobile** for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

## II.      Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 21, United States Code, Sections 841 and 846 involving Jimi COLLIER, ███████████ and other as-yet known and unknown individuals.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☐ Original     ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of <br> *(Briefly describe the property to be searched* <br> *or identify the person by name and address)* <br> THE CELLULAR TELEPHONE ASSIGNED <br> CALL NUMBER 513-514-7951 <br> (T-Mobile US, Inc.) | ) <br> ) <br> ) <br> ) <br> ) <br> )    Case No.   1:23-MJ-382 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Southern _____ District of _____ Ohio _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A. This Court has authority to issue this warrant under 18 U.S.C. 2703(c)(1)(A) and 2711(3)(A). Because the government has satisfied the requirements of 18 U.S.C. 3122, this warrant also constitutes an order under 18 U.S.C. 3123.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____ 6/19/2023 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Karen L. Litkovitz _____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☑ for _30_ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   **Jun 5, 2023** _____

          *Karen L. Litkovitz*
City and state:   Cincinnati, Ohio _____    **Karen L. Litkovitz**
                            **United States Magistrate Judge**

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br> 1:23-MJ-382 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|
|  I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.<br><br><br>Date: _____ |

_____
*Executing officer's signature*

_____
*Printed name and title*

## <u>ATTACHMENT A</u>
**Property to Be Searched**

1. The cellular telephone assigned call numbers **513-514-7951 (SUBJECT TELEPHONE 2)**,whose service provider is T-Mobile US Inc., a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ.

2. Information about the location of the **SUBJECT TELEPHONE** that is within the possession, custody, or control of T-Mobile, including information about the location of the **SUBJECT TELEPHONE** if it is subsequently assigned a different call number.

# ATTACHMENT B

## Particular Things to be Seized

### I.      Information to be Disclosed by the Provider

All information about the location of the **SUBJECT TELEPHONE** described in Attachment A for a period of thirty days, during all times of day and night.  "Information about the location of the **SUBJECT TELEPHONE**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of **T-Mobile**, **T-Mobile** is required to disclose the Location Information to the government.  In addition, **T-Mobile** must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with **T-Mobile's** services, including by initiating a signal to determine the location of the **SUBJECT TELEPHONE** on **T-Mobile's** network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate **T-Mobile** for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

**II.** **Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 21, United States Code, Sections 841 and 846 involving Jimi COLLIER, ████████████ and other as-yet known and unknown individuals.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>THE CELLULAR TELEPHONE ASSIGNED<br>CALL NUMBER 513-514-7951<br>(T-Mobile US, Inc.) | )<br>)<br>)<br>)<br>)<br>)    Case No. 1:23-MJ-382 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):* See Attachment A. This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A), and 2711(3)(A). Because the government has satisfied the requirements of 18 U.S.C. § 3122, this warrant also constitutes an order under 18 U.S.C. § 3123.

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1)<br>21 U.S.C. 846 | Possession with Intent to Distribute a Controlled Substance and Conspiracy to do the same. |

The application is based on these facts:

See Affidavit in Support of Application for Search Warrant. To ensure technical compliance with 18 U.S.C. 3121-3127, the requested warrant will also function as a pen register order. I thus certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the Drug Enforcement Administration. See 18 U.S.C. 3122(b), 3123(b).

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Kyle J. Wojcik*
*Applicant's signature*

TFO Kyle J. Wojcik, DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ FaceTime video conference _____ *(specify reliable electronic means)*.

Date: **Jul 10, 2023**

*Stephanie K. Bowman*
*Judge's signature*

City and state: Cincinnati, Ohio

Stephanie K. Bowman, United States Magistrate Judge
*Printed name and title*

**<u>AO 106   Attachment</u>**


  See Affidavit in Support of an Application for a Search Warrant.  To ensure technical compliance with the Pen Register Statute, <u>18 U.S.C. §§ 3121-3127</u>, this warrant also functions as a pen register order.  Consistent with the requirement for an application for a pen register order, I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by The Drug Enforcement Administration. *See* <u>18 U.S.C. §§ 3122(b)</u>, <u>3123(b)</u>.


  I declare under penalty of perjury that the foregoing is true and correct.


<u>July 10, 2023   </u>    <u>*s/Karl P. Kadon*     </u>
DATE          KARL P. KADON (OH 09324)
            Assistant United States Attorney

**ATTACHMENT A**
**Property to Be Searched**

1. The cellular telephone assigned call number and **513-514-7951 (SUBJECT TELEPHONE 2)**, whose service provider is T-Mobile US Inc., a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ.

2. Information about the location of the **SUBJECT TELEPHONE** that is within the possession, custody, or control of T-Mobile, including information about the location of the **SUBJECT TELEPHONE** if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

I.      **Information to be Disclosed by the Provider**

All information about the location of the **SUBJECT TELEPHONE** described in Attachment A for a period of thirty days, during all times of day and night.  "Information about the location of the **SUBJECT TELEPHONE**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of **T-Mobile**, **T-Mobile** is required to disclose the Location Information to the government.  In addition, **T-Mobile** must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with **T-Mobile's** services, including by initiating a signal to determine the location of the **SUBJECT TELEPHONE** on **T-Mobile's** network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate **T-Mobile** for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

II.    **Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 21, United States Code, Sections 841 and 846 involving Jimi COLLIER, ███████████ and other as-yet known and unknown individuals.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBERS:** | **Case No. 1:23-mj-382** |
| **SUBJECT TELEPHONE 1: 513-473-1748** | |
| **SUBJECT TELEPHONE 2: 513-514-7951** | **Filed Under Seal** |
| **(T-MOBILE)** | |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Kyle J. Wojcik, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c) (1) (A) for information about the location of the cellular telephone assigned call number **513-473-1748** ("**SUBJECT TELEPHONE 1**"), subscribed to ███████ at ████████████████ and cellular telephone assigned call number **513-514-7951** ("**SUBJECT TELEPHONE 2**") subscribed to James Jones at 75 vom OH 45237. The service provider for both **SUBJECT TELEPHONE(S) 1 and 2** is T-Mobile US Inc., a wireless provider headquartered at 4 Sylvan Way, Parsippany, NJ and are described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The

1

requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* <u>18 U.S.C. § 3123(b)</u> (1).

3. I am a Detective with the Erlanger Police Department located in Kenton County, Kentucky and have been so employed since April 2013. I have been a police officer for more than twelve (12) years and have completed basic law enforcement training at the Kentucky Department of Criminal Justice Training and have since received extensive training in the investigation of offenses involving controlled substances. I am currently assigned as a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) and have been so assigned since June 2020. I have been previously assigned to the Northern Kentucky Drug Strike Force (NKDSF) and in other capacities where my sole responsibility was to investigate drug offenses. My duties and responsibilities have included conducting criminal investigations for violations of federal law, particularly those found in Title 21 and Title 18 of the United States Code. As a DEA TFO and drug detective, I have participated in over one hundred criminal investigations seeking evidence of violations of state drug violations and the Federal Controlled Substances Act (Title 21 of the United States Code).

4. By virtue of my involvement in drug investigations, I have become familiar with the various means and mechanisms used by narcotics traffickers to import and distribute controlled substances and to conduct their illicit business without being detected by law enforcement. I am familiar with the fact that drug traffickers make tremendous profits through drug trafficking and require large amounts of currency to operate surreptitiously. In this regard, I have obtained and executed numerous search warrants pursuant to which I have seized ledgers, notebooks, papers, and other related record-keeping instruments, all of which have been used to record multiple narcotics and related money laundering transactions, telephone books, diaries, invoices, beepers,

cellular telephones, and correspondence, all of which have contained evidence of narcotic trafficking and money laundering violations.

5. During the course of my law enforcement career, I have conducted and participated in the investigation of numerous criminal offenses, including those involved in the current investigation. I have participated in over one hundred illicit drug trafficking investigations, ranging from street level dealers to major drug suppliers. These investigations have included the unlawful importation, possession with intent to distribute and distribution of illegal substances, the related money laundering instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotics offenses. These investigations have resulted in the seizure of narcotics, arrests of suspects, their prosecution, conviction, and the seizure of large amounts of U.S. currency; and have involved: the use of confidential informants; undercover agents; the analysis of toll records; physical surveillances and the execution of search warrants. I have planned, participated in and supervised the execution of no fewer than one hundred search warrants authorizing the search of drug traffickers, locations associated with drug traffickers and their co-conspirators, such as residences, businesses, storage facilities, outbuildings, safety deposit boxes, vehicles, telephones and electronic devices. I have testified in grand jury proceedings and have written reports and analyzed documents in the course of investigations.

6. I have been involved in post-arrest interviews of individuals, interviewed defendants in conjunction with post-arrest proffers, interviewed confidential informants and other non-defendant individuals with knowledge of illegal drug trafficking. During such interviews and discussions with other experienced agents, I have become familiar with the day-to-day operations of drug traffickers, distributors, and transporters of controlled substances. I have gained knowledge regarding the various methods, techniques, codes, and/or jargon used by illegal drug traffickers in

3

the course of their criminal activities, including the use of firearms to protect their narcotics related activities and the use of cellular telephones and personal digital assistants to facilitate communications while attempting to avoid law enforcement scrutiny.

7. As a result of my participation in these, and other activities, I have gained particular knowledge in the use of undercover agents, confidential informants, physical surveillance, consensual recordings, investigative interviews, mail covers, garbage searches, GPS tracking devices, and pole-mounted cameras. I have been required to analyze information resulting from traditional record sources, such as, financial records, utility records, and telephone toll and subscriber records. I have further been required to analyze nontraditional record sources, such as the informal ledgers routinely maintained by narcotics traffickers listing amounts of drugs received from sources and distributed to customers and the amounts of money received from customers and owed to sources, commonly referred to as pay-owe sheets. I have also gained experience in the identification and collection of drug and non-drug evidence.

8. I am currently assigned to the Cincinnati District Office of the DEA. I've received specialized training that focuses on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations.

9. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

10. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841 and 846 have been committed, are being committed, and will be committed by Jimi COLLIER, ██████████ and other known and as-yet unknown individuals. I believe there is probable cause that the **SUBJECT TELEPHONE(S) 1 and 2** are being used in furtherance of the aforementioned crimes and that there is also probable cause to believe that the location of the **SUBJECT TELEPHONE(S) 1 and 2** will constitute evidence of those criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

11. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

## **BACKGROUND OF CASE**

12. In May of 2021, Agents from the United States Postal Inspection Service (USPIS) conducted a controlled delivery of several kilograms of cocaine shipped from Puerto Rico to Cincinnati, Ohio. A subject, hereafter referred to as Cooperating Defendant 1 (CD1)[1], took possession of that cocaine and was later charged in federal court in the Southern District of Ohio (SDOH) for violation of federal drug law.

13. CD1 had provided USPIS with information on the person that would have been the recipient of the seized cocaine and stated that this same person had been the recipient of kilogram quantities of cocaine per month, between January of 2021 and May of 2021.

---

[1] CD1 is cooperating for case consideration and the information that has been provided has proven truthful and been independently corroborated by agents.

5

14. CD1 described a subject, known only to him/her as "Moreno Casino", who was a black male, bald, short, with a fine-line beard. CD1 stated that this man drove a black Cadillac and a white Mercedes. CD1 provided an Ohio license plate of GYA-4942 for the Mercedes. CD1 stated that while at a casino, an employee had called the man "Jimmy." CD1 also stated that in May of 2021, this person brought bulk US currency, payment for cocaine, to CD1, in a box which contained a shipping label from Nike to ███████████ at ████████████████████ ████ DEA Task Force Officer (TFO) Joshua Schlie knew ████████ to be a drug trafficker. TFO Schlie identified him as such, after monitoring calls between ████████ and his uncle, ████████ when ████ was incarcerated with the Bureau of Prisons, in the mid-2000's, for violations of federal drug law. During those calls, ████ was instructing ████████ and other relatives to set aside money for him, so he would have it when he was released.

15. TFO Schlie queried GYA-4942 through a license plate reader system and found that the license plate had been captured on October 25, 2021, on Hammel Ave., just north of Harmon Way, in Golf Manor, Ohio. A photo taken at the time showed the plate attached to what appeared to be a white Mercedes. TFO Schlie located the VIN number for the Mercedes and through a commercial database and found that the VIN number was associated with Jimi COLLIER. TFO Schlie located an additional vehicle that COLLIER had registered to him which was a black Cadillac with Ohio license plate HXQ8028. TFO Schlie also found that the VIN number for the white Mercedes was now assigned to Ohio license plate JSM7139, registered to Jimi COLLIER at 6231 Hammel Ave., in Golf Manor, Ohio.

16. In May of 2022, TFO Schlie sent a picture of COLLIER to USPIS agents, which they showed to CD1. CD1 positively identified COLLIER as the subject known to USPIS agents as "Moreno Casino."

17.    On June 1, 2021, TFO Schlie received player records for COLLIER from the Casino Control Commission. COLLIER listed his phone number as **513-473-1748 (SUBJECT TELEPHONE 1)**, in those records. TFO Schlie queried **SUBJECT TELEPHONE 1** through the Hamilton County Jail Calls 2 system and found that ███████████ who had been an inmate at the Hamilton County Ohio Justice Center on December 6, 2020, called this number.

18.    A criminal history inquiry was conducted on ██████████ who was found to have been charged and convicted of the following felony offenses: Two (2) counts of Possession of Drugs; two (2) counts of Possession of Cocaine; Trafficking Cocaine; and Trafficking Heroin (all out of the State of Ohio).

19.    TFO Schlie also queried **SUBJECT TELEPHONE 1** through Cash App and found it to be associated to an account with the name "jimi collier", username: $jimicollier.

20.    On June 2, 2022, TFO Schlie applied for and was granted a State of Ohio, Hamilton County, search warrant for GPS location data regarding **SUBJECT TELEPHONE 1**. During that period, TFO Schlie observed that COLLIER stayed at his address on Hammel Ave., most often, but on occasion also stayed in the 5400 block of Rolston Ave., in Norwood, OH.  Notably, COLLIER took trips to Chicago, IL and New York City, NY. TFO Schlie also noted that no employment or source of income for COLLIER could be found in his review. Also, during this period, the white Mercedes referenced above was no longer being observed and COLLIER began to operate a black 2017 Porsche Panamera, bearing Ohio license plate JUE-8043, registered to ███████████ From commercial database records, TFO Schlie believed ████████ to be COLLIER's mother.

---

[2] Jail Calls are admonished and recorded.

21.     On February 7, 2023, TFO Mark Bohan of the Hamilton County Heroin Task Force (HCTF) was contacted by the Cincinnati Police Department (CPD) about a suspected heroin/fentanyl overdose, which occurred at ███████████████████████████████████

22.     TFOs Bohan and Mike Davenport arrived on scene and were met by CPD Police Officer (PO) Darryl Williams and Hamilton County Coroner's Office (HCCO) Investigator (Inv.) Dylan Wical. PO Williams stated they were dispatched along with the Cincinnati Fire Department (CFD) for a male non-breather, possible drug overdose. PO Williams stated when they arrived, they found the male, identified as ████████████ deceased in a vehicle in the parking lot of ███
███████████

23.     After being briefed by PO Williams, TFOs Bohan and Davenport, with Inv. Wical, photographed and processed the scene. Inv. Wical conducted a visual examination of the body and no signs of trauma or injury were observed. While processing the scene the TFOs and Inv. Wical located a baggie containing white powder clinched in Cornett's right hand. A black Samsung phone was located on ████████ and a gray LG cell phone was located in the driver's side door and were then seized by TFOs Bohan and Davenport.

24.     Between February 22, 2023, and March 2, 2023, the Hamilton County Ohio Crime Laboratory analyzed the recovered white powder from ████████ and concluded it was less than a one (1) gram mixture of fentanyl and cocaine, both of which are Controlled Substances.

25.     On April 4, 2023, the Hamilton County Ohio Coroner's Office released a cause of death in relation to ████████████ as an Overdose of fentanyl and cocaine with acetyl fentanyl and probable xylazine also present.

26.     TFO Davenport submitted Cornett's phone to the Ohio Narcotics Intelligence Center (ONIC) run by the Ohio Department of Safety (DPS) in West Chester, Ohio for analysis

of the phone contents. ONIC analysts advised TFO Davenport that they had located text conversations prior to Cornett's death between ███ and **SUBJECT TELEPHONE 1**.

27.     TFO Davenport was advised by ONIC that this phone number belonged to a subject identified as Jimi COLLIER of Cincinnati, Ohio. ███ had this contact identified in his phone as "Snake."

28.     Data from Cornett's phone showed text messages on January 15, 2023, where ███ asked COLLIER, "Can I get a half for 350?" COLLIER replied "4". ███ asks "Can I come and grab that half cuzzo?" COLLIER replied "4". ███ states "Ok. Meet you at your spot? I'm at my jouse right now." COLLIER replies "Im bout to go grab it."

29.     Based upon his training and experience, TFO Davenport believed this conversation to be evidence of a drug transaction where COLLIER provided the drugs to ███

30.     Agents learned that back in February of 2019 Agents from the Norwood, Ohio (OH) Drug Task Force (NDTF), DEA Cincinnati District Office (CDO), Ohio Bureau of Criminal Investigation (BCI), Cincinnati Police Violent Crime Squad (VCS), Hamilton County Heroin Task Force (HCTF) and Department of Alcohol Tobacco and Firearms (ATF) initiated an investigation into a subject by the name of ███████ During the course of the investigation, agents executed two (2) state search warrants at residences associated with ██████ in Cincinnati, Ohio, which yielded approximately 381 grams of fentanyl, 53 grams of crack cocaine, digital scales, and items used to manufacture crack cocaine. ██████ was subsequently arrested at one (1) of the residences and charged with drug trafficking by the State of Ohio.

31.     Shortly after ██████ was arrested, he made a phone call from the Hamilton County (OH) Justice Center to a female who agents believed to be his (███████ mother. During the recorded call, ██████ made the following statement: "For real, I need you to call

9

CUZ too though. His number is 513-473-1748 (**SUBJECT TELEPHONE 1**). Tell him what happened and tell him I went down because someone told like a month ago." NDTF Agents learned through their Confidential Source (CS)[3] that ██████ source of supply went by the name of "CUZ". The CS reported that he/she believed ██████ called him "CUZ" because he is ██████ cousin.

32.     NDTF Agents queried telephone number **SUBJECT TELEPHONE 1** through databases available to law enforcement and found that it returned to a Jimi COLLIER residing at 6231 Hammel Avenue in Cincinnati, Ohio 45237. Investigators conducted surveillance at the address and observed a black Acura TL bearing Ohio license plate GHV2131 in the driveway.  A query of the license plate returned with Jimi COLLIER as the registered owner. Once investigators identified this residence for COLLIER, they conducted a trash pull which yielded two (2) empty boxes of baking soda which, based on experience investigating drug offenses, I know to be an item sometimes referred to as "cut" and commonly used in the manufacturing / processing of cocaine base ("crack-cocaine").

33.     A criminal history inquiry was conducted on COLLIER who was found to have been charged and convicted of the following felony offenses: Drug Trafficking; Drug Abuse; and Possession of Drugs (all by the State of Ohio).

34.     An administrative subpoena was served to T-Mobile for **SUBJECT TELEPHONE 1** and a review of the records revealed it was subscribed to ██████ at ██████ ████████████████████ Information received from T-Mobile indicated the service for **SUBJECT TELEPHONE 1** began on April 29, 2021.

---

[3] CS was cooperating for case consideration and the information that has been provided has proven truthful and been independently corroborated by agents.

35.     Toll analysis was conducted on **SUBJECT TELEPHONE 1** which showed that phone number 513-908-8694 (the x8694 number) was a top caller. Investigators queried that phone number and found that it was associated with ██████████████ who TFO Schlie knew to be the girlfriend of COLLIER. Another top caller of **SUBJECT TELEPHONE 1** was phone number 513-966-0081 (the x0081 number). Investigators queried that phone number and found that it was associated with ██████████████

36.     Utilizing a commercial database available to law enforcement, I found that ██████████████ had a previous listed address of 6231 Hammel Ave, Cincinnati, Ohio, 45237. The database also listed a "Jimi" as a spouse/close association.

37.     In April of 2023, TFO Schlie was contacted by USPIS Special Agent (SA) Karen O'Neill who said that CD1 told her that he/she was recently in contact with Jimi COLLIER. SA O'Neill provided TFO Schlie and I with recorded FaceTime Calls between CD1 and COLLIER. I reviewed multiple FaceTime calls where CD1 and COLLIER discussed a future drug transaction in which COLLIER wanted to get five (5) kilograms from CD1 and in exchange would receive eighteen thousand five hundred dollars ($18,500.00) per kilogram. SA O'Neill provided the phone number that CD1 was contacting COLLIER on as **513-514-7951** (**SUBJECT TELEPHONE 2**).

38.     An administrative subpoena was served to T-Mobile for **SUBJECT TELEPHONE 2** and a review of the records revealed it was subscribed to James Jones at 75 vom, OH. 45237. This address was queried and could not be located. The 45237 zip code includes the neighborhoods of Roselawn, Bond Hill, and Golf Manor, Ohio; where COLLIER's address, 6231 Hammel Ave., is located. Information received from T-Mobile indicated the service for **SUBJECT TELEPHONE 2** began on September 28, 2022.

39.     Toll analysis was conducted on **SUBJECT TELEPHONE 2** which showed it to be in contact with the x8694 number and the x0081 number with which **SUBJECT TELEPHONE 1** was also in contact.

40.     On April 28, 2023, United States Magistrate Judge Karen L. Litkovitz authorized a Pen Register order for **SUBJECT TELEPHONE(S) 1 and 2**. I reviewed data collected from the Pen Register of both **SUBJECT TELEPHONES** and found them to be in contact with the x8694 number.

41.     On May 5, 2023, United States Magistrate Judge Stephanie K. Bowman granted and signed search warrants authorizing the use of GPS location monitoring on **SUBJECT TELEPHONE(S) 1 and 2**.

42.     On May 8, 2023, at approximately 11:35 a.m., TFO Schlie conducted surveillance at Vine and Walnut Streets in Elmwood, Ohio where COLLIER's Porsche Panamera was parked. While on surveillance, agents received electronic surveillance location data for the **SUBJECT TELEPHONES** that showed them to be in the area of Vine and Walnut Streets.

43.     At approximately 11:55 a.m., TFO Schlie observed COLLIER walk from the west side of Vine Street to the Porsche and then depart. Approximately five (5) minutes later, TFO Schlie located the Porsche parked on Dillward Street near 301 W. North Bend Road in Cincinnati, Ohio. Shortly after TFO Schlie located the Porsche, he observed COLLIER walking away from that house and getting back into the Porsche.

44.     Later that day, I reviewed Pen Register data of **SUBJECT TELEPHONE 2** and observed it to be in contact with telephone number 614-315-4811 (the x4811 number). An administrative subpoena was served to T-Mobile for the x4811 number and a review of the records revealed that it was subscribed to ███████ ████████ with a service and billing address of ████████████.

45.     Based on facts learned in investigation I believe that ███████ is a source of supply (SOS) of cocaine in Columbus, Ohio, and is receiving fifty (50) to sixty (60) kilograms of cocaine a month from a SOS in California.

46.     On May 12, 2023, at approximately 11:00 a.m., I conducted surveillance at 6231 Hammel Avenue where I observed the Porsche Panamera parked in the driveway. While on surveillance I received electronic surveillance location data for the **SUBJECT TELEPHONES** that showed them to be in the area of Hammel Avenue. Approximately fifteen (15) minutes later I observed who I believed to be COLLIER walk around the Porsche in the driveway and thereafter I saw the vehicle depart. I followed the Porsche to 301 W. North Bend Road where the vehicle was observed to park in the driveway of a detached garage behind the house. While on surveillance I received electronic surveillance location data for the **SUBJECT TELEPHONES** that showed them to be in the area of W North Bend Road.

47.     On May 25, 2023, at approximately 10:04 a.m., I received electronic surveillance location data for **SUBJECT TELEPHONE 2** that showed it to be in the area of 5437 Rolston Avenue in Norwood, Ohio, which I knew to be an address associated with ███████ (COLLIER's girlfriend). Shortly after receiving the location data, I arrived in the area and observed COLLIER's Porsche parked in the driveway of the house. While on surveillance I received electronic surveillance location data for **SUBJECT TELEPHONE 1** that showed it to be in the area of Rolston Avenue.  Approximately fifteen (15) minutes later I observed the Porsche pull out of the driveway and followed it to 6231 Hammel Avenue. After the vehicle arrived in the area I observed COLLIER driving the Porsche as he parked it on the street. **SUBJECT TELEPHONE(S) 1 and 2** showed location information in the area of Hammel Avenue while agents were conducting surveillance.

48.     At approximately 11:00 a.m., I observed the Porsche pull away from the residence while other agents followed.  As agents were following the vehicle, it was observed to turn onto multiple side streets off Montgomery Road in a manner believed to detect law enforcement surveillance. Agents were unable to follow the vehicle at this time, but then observed it driving back on Montgomery Road towards the area of Rolston Avenue.  TFO Schlie followed the vehicle as it parked in the driveway of 5437 Rolston Avenue where COLLIER was observed walking up the steps toward the house. Approximately three (3) minutes later TFO Schlie observed the Porsche pull out of the driveway where agents followed it to 301 W. North Bend Road. While on surveillance agents received electronic surveillance location data for the **SUBJECT TELEPHONES** that showed them to be in the area of W. North Bend Road.

49.     At approximately 12:05 p.m., I observed COLLIER exit the front door of the house and walk toward Dillward Street where TFO Schlie then observed COLLIER get into the Porsche. Shortly after COLLIER got into the Porsche, TFO Schlie observed an older, unidentified black male walk up to the passenger side of the Porsche and walk back to a blue Dodge Caravan that was parked on the street[4].  I observed both vehicles then drive north on Dillward Street toward W. North Bend Road. As both vehicles turned to go east on W. North Bend Road they appeared to be traveling in tandem. Agents attempted to follow both vehicles, but lost sight of the Porsche as it turned onto a side street.

50.     On June 23, 2023, pole cameras were installed in the area of 6231 Hammel Avenue and 301 W. North Bend Road in Cincinnati, Ohio where they began transmitting video on each location.

51.     On June 26, 2023, TFO Schlie reviewed pole camera footage of 301 W. North Bend Road in Cincinnati, Ohio.  During a review of the pole camera footage, TFO Schlie observed ■

---

[4] Based on my training and experience I believe that this meeting was indicative of a drug transaction.

███████████ arrive at approximately 2:55 p.m., and enter the North Bend location via a door that leads to the second floor. Shortly after ███████████ arrived, footage showed his brother ███████████ arriving and going through the same door while carrying a plastic bag.

52.     At approximately 3:02 p.m., TFO Schlie observed ███████████ exit the residence and leave. After ███████████ left, TFO Schlie observed a black Honda Crosstour arrive and park alongside 301 W. North Bend Road. Shortly after the vehicle arrived, TFO Schlie observed ███████████ exit the house and walk toward the vehicle.

53.     At approximately 3:13 p.m., TFO Schlie observed COLLIER arrive at the house and enter through the door that leads to the second floor. Less than five (5) minutes later, TFO Schlie observed COLLIER exit and get into a two-door black Lexus bearing Ohio license plate KBN 8926[6].

54.     At approximately 5:24 p.m., TFO Schlie observed COLLIER arrive at the house and enter through the same door as he did earlier. Approximately ten (10) minutes later, TFO Schlie observed COLLIER exit the house and get into the black Lexus.

55.     Based on my experience and training in drug investigations, I know that this activity is indicative of drug traffickers who store drugs at a stash location and who then retrieve certain quantities of such drugs for re-distribution.

56.     On June 27, 2023, at approximately 1:00 p.m., agents received electronic surveillance location data on **SUBJECT TELEPHONE(S) 1 and 2** that showed them to be in the Madisonville neighborhood of Cincinnati, Ohio.

57.     At approximately 1:05 p.m., TFO Schlie located COLLIER's Lexus parked in the lot of the Cincinnati Health Department at 5818 Madison Avenue within the radius of the

---

[5] TFO Schlie is familiar with ███████████ because he was a target of a previous DEA investigation.
[6] Registered to a black two (2) door 2015 Lexus RC350 to Jimi Collier at 6231 Hammel Avenue in Cincinnati, Ohio.

electronic surveillance location data that TFO Schlie received. While on surveillance, TFO Schlie observed COLLIER exit the Health Department, get into the Lexus, and leave. Agents attempted to follow the vehicle, but circumstances forced them to discontinue that effort.

58.     On June 29, 2023, at approximately 11:05 a.m., TFO Schlie was actively monitoring live pole camera footage and observed COLLIER's Lexus arrive at 301 W. North Bend Road. TFO Schlie observed COLLIER walk from where the vehicle was parked and enter the door to the second floor of the house. After COLLIER arrived at the house, agents received electronic surveillance location data on **SUBJECT TELEPHONE(S) 1 and 2**, which showed them to be in the area of 301 W. North Bend Road.

59.     At approximately 11:15 a.m., TFO's Shawn Cox, Phil Hermann and I established physical surveillance in the area. TFO Wojcik then began monitoring pole camera footage at 301 W. North Bend Road.

60.     At approximately 11:20 a.m., I observed COLLIER exit the house and through physical surveillance I observed him get into the black Lexus. Agents followed COLLIER as he traveled toward the area of 6231 Hammel Avenue.

61.     At approximately 11:30 a.m., I began monitoring pole camera footage at 6231 Hammel Avenue, where I observed the black Lexus pull into the driveway. I observed COLLIER exit the vehicle and walk into the house. Approximately one (1) minute later, I observed COLLIER exit the residence, get into the black Lexus and pull out of the driveway. Agents followed the vehicle until it turned onto Glenridge Place which was a dead-end street. Agents established surveillance in the area and received electronic surveillance location data which placed **SUBJECT TELEPHONE 2** in the area of Glenridge Place. Norwood (OH) Drug Task Force Officers arrived in the area to assist agents with surveillance and observed COLLIER's Lexus parked in front of 134 Glenridge Place.

62. At approximately 12:06 p.m., agents received electronic surveillance location data which placed **SUBJECT TELEPHONE 1** in the area of 134 Glenridge Place. Surveillance was then discontinued.

63. Based upon my training, experience, and knowledge of this investigation I know drug traffickers and members of DTOs utilize multiple devices and frequently switch and drop cellular telephone numbers to avoid law enforcement detection. Furthermore, I am also aware that drug traffickers register their cellular devices under associates' names that aren't affiliated with the DTO in an effort to avoid law enforcement identification. Because as described above this is what he has done and being aware of the other facts uncovered in this investigation - also as set forth above - I believe it reasonable and likely that COLLIER is utilizing multiple cellular telephone numbers in order to avoid detection.

64. Based upon my belief that **SUBJECT TELEPHONE(S) 1 and 2** are being used by Jimi COLLIER and or yet to be identified members of the DTO and because Jimi COLLIER, ████████████ and other yet to be identified co-conspirators, are involved in the coordination, delivery, and trafficking of drugs, I believe that the location of the of the **SUBJECT TELEPHONES** will help reveal COLLIER's location and potential locations of drugs and proceeds.

65. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking

technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

66. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the **SUBJECT TELEPHONES**, including by initiating a signal to determine the location of the **SUBJECT TELEPHONES** on T-Mobile's network or with such other reference points as may be reasonably available.

67. Based on my training and experience, I know that T-Mobile can collect cell-site data about the **SUBJECT TELEPHONES**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

68. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

69. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **SUBJECT TELEPHONES** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(l). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

70. I further request that the Court to direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile wireless services, including by initiating a signal to determine the location of the **SUBJECT TELEPHONES** on T-Mobile wireless network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

71.     I further request that the Court authorize the government to install and operate a cell-site simulator to obtain dialing, routing, addressing, and signaling information from the **SUBJECT TELEPHONES** to determine the location of the **SUBJECT TELEPHONES**.

72.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **SUBJECT TELEPHONES** outside of daytime hours.  I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation.  Accordingly, there is probable cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Kyle J. Wojcik
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on this 10th day of July, 2023 by reliable electronic means, specifically, FaceTime video conference.

Hon. Stephanie K. Bowman
United States Magistrate Judge

20

**ATTACHMENT A**
**Property to Be Searched**

1. The cellular telephone assigned call number and **513-514-7951 (SUBJECT TELEPHONE 2)**, whose service provider is T-Mobile US Inc., a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ.

2. Information about the location of the **SUBJECT TELEPHONE** that is within the possession, custody, or control of T-Mobile, including information about the location of the **SUBJECT TELEPHONE** if it is subsequently assigned a different call number.

## ATTACHMENT B

## Particular Things to be Seized

### I.     Information to be Disclosed by the Provider

All information about the location of the **SUBJECT TELEPHONE** described in Attachment A for a period of thirty days, during all times of day and night.  "Information about the location of the **SUBJECT TELEPHONE**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of **T-Mobile**, **T-Mobile** is required to disclose the Location Information to the government.  In addition, **T-Mobile** must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with **T-Mobile's** services, including by initiating a signal to determine the location of the **SUBJECT TELEPHONE** on **T-Mobile's** network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate **T-Mobile** for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 21, United States Code, Sections 841 and 846 involving Jimi COLLIER, ███████████ and other as-yet known and unknown individuals.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

### for the

### Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )    Case No.  1:23-MJ-382 |
| THE CELLULAR TELEPHONE ASSIGNED | ) |
| CALL NUMBER 513-514-7951 | ) |
| (T-Mobile US, Inc.) | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Southern_____ District of _____Ohio_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A. This Court has authority to issue this warrant under 18 U.S.C. 2703(c)(1)(A) and 2711(3)(A).  Because the government has satisfied the requirements of 18 U.S.C. 3122, this warrant also constitutes an order under 18 U.S.C. 3123.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____July 24, 2023_____ *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Duty Magistrate Judge_____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☑ for  _30_  days *(not to exceed 30)*     ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     **2:05 PM, Jul 10, 2023**          *Stephanie K. Bowman*
                                                                                              *Judge's signature*

City and state:          Cincinnati, Ohio          Stephanie K. Bowman, United States Magistrate Judge
                                                                                    *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  1:23-MJ-382 | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**

1. The cellular telephone assigned call number and **513-514-7951 (SUBJECT TELEPHONE 2)**, whose service provider is T-Mobile US Inc., a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ.

2. Information about the location of the **SUBJECT TELEPHONE** that is within the possession, custody, or control of T-Mobile, including information about the location of the **SUBJECT TELEPHONE** if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be Disclosed by the Provider**

All information about the location of the **SUBJECT TELEPHONE** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the **SUBJECT TELEPHONE**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of **T-Mobile**, **T-Mobile** is required to disclose the Location Information to the government. In addition, **T-Mobile** must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with **T-Mobile's** services, including by initiating a signal to determine the location of the **SUBJECT TELEPHONE** on **T-Mobile's** network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate **T-Mobile** for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**II.     Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 21, United States Code, Sections 841 and 846 involving Jimi COLLIER, ████████████, and other as-yet known and unknown individuals.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.